IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2021 Term

_____

No. 20-0823
_____

FILED
**November 1, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* L.W.

_____

Appeal from the Circuit Court of Ohio County
Honorable David J. Sims, Judge
Civil Action No. 19-CJA-100

AFFIRMED
_____

Submitted:  September 28, 2021
Filed:  November 1, 2021

Michael B. Baum, Esq.
Edmond & Baum, PLLC
Wheeling, West Virginia
Attorney for Petitioner, J.W.

Patrick Morrisey, Esq.
Attorney General
Charleston, West Virginia
Lee Niezgoda, Esq.
Assistant Attorney General
Fairmont, West Virginia
Attorneys for Respondent, DHHR

Joseph J. Moses, Esq.
Wheeling, West Virginia
Guardian ad Litem

JUSTICE HUTCHISON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1.      "'Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.'  Syl. Pt. 1, *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996)."  Syl. Pt. 1, *In re Cecil T.,* 228 W. Va. 89, 717 S.E.2d 873 (2011).

2.      "The use of medication-assisted treatment is authorized by the Medication-Assisted Treatment Program Licensing Act, West Virginia Code §§ 16-5Y-1 to 16-5Y-13 (2016), and the Act's supporting regulations. Medication-assisted treatment will not be appropriate or beneficial for all persons suffering from opioid use disorder. However, when medication-assisted treatment is appropriate and potentially beneficial,

i

any bias against its use is contrary to the public policy of this State as announced by the Legislature." Syl. Pt. 5, *In re M.M.*, 244 W. Va. 316, 853 S.E.2d 556 (2020).

3.     "Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996).

4.     "'Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604,] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected.' Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980)." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011).

**HUTCHISON, Justice:**

The petitioner father, J.W.,[1] appeals the September 11, 2020, order of the Circuit Court of Ohio County that terminated his parental rights to his child, L.W. In this appeal, the petitioner argues that the circuit court erred by terminating his parental rights instead of imposing the less restrictive disposition alternative provided in West Virginia Code § 49-4-604(c)(5) (2020).[2] Having considered the parties' briefs and oral arguments, the submitted appendix record, and pertinent authorities, we find no error and, therefore, affirm the circuit court's decision.

## I. Facts and Procedural Background

The West Virginia Department of Health and Human Resources ("DHHR") filed a petition on June 27, 2019, alleging that the petitioner had abused and neglected his son, L.W. Specifically, the DHHR alleged that the petitioner was currently incarcerated; had a lengthy criminal history; had failed to develop a relationship with L.W.; and had failed to provide for L.W. emotionally, physically, and financially.[3] At the time the petition

---

[1] In cases involving sensitive facts, we use initials to identify the parties. *See* W.Va. R. App. Proc. 40(e); *see also State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] *See* note 10, *infra.*

[3] The petitioner was incarcerated on charges of petty theft, criminal trespass, and a probation violation. According to the abuse and neglect petition, his criminal history includes criminal damaging or endangering (two separate cases); various thefts; criminal trespass; domestic violence; underage consumption/possession; operating a vehicle while impaired; reckless operation; and drug possession.

1

was filed, L.W. was in the custody of his mother, S.H., and stepfather, M.H., who were homeless and allowing L.W. to roam the streets of Wheeling alone. Accordingly, DHHR also alleged that S.H. and M.H. had failed to provide for L.W. emotionally, physically, and financially. In addition, DHHR alleged that S.H. had outstanding arrest warrants which had led to her recent incarceration; also had a significant criminal history; and had exposed L.W. to violent men who had assaulted her. With respect to M.H., DHHR alleged that he, too, had a criminal history.[4]

The adjudicatory hearing was held on October 15, 2019. The petitioner stipulated that his incarceration affected his ability to parent L.W. Accordingly, the circuit court adjudged him as an abusive and/or neglectful parent. Thereafter, the petitioner filed a motion for a post-adjudicatory improvement period.[5]

At a status hearing held on November 21, 2019, the circuit court was informed that the petitioner had attended a multi-disciplinary team ("MDT")[6] meeting, but "[h]e had not been drug screening, reportedly due to him not having the code. [He] had

---

[4] Subsequently, the abuse and neglect petition was amended to allege that M.H. was also abusing methamphetamines.

[5] S.H. was also adjudicated as an abusing and/or neglectful parent and was granted a post-adjudicatory improvement period.

[6] *See* W. Va. Code § 49-4-405 (2015) (establishing multidisciplinary treatment teams for abuse and neglect cases).

just gotten out of incarceration . . . [and] stated at the MDT that he wants to get back on subutex to help with cravings."[7]  DHHR recommended, however, that the petitioner get a Vivitrol shot to treat his drug addiction rather than use subutex because he had detoxed from that drug during his incarceration.  The circuit court was also informed that the petitioner had not yet visited his child.  Another status hearing was scheduled for December 19, 2019.

At the December 2019 status hearing, the circuit court was informed that the terms of the petitioner's improvement period had yet to be approved, but he had appeared at an MDT and "reported that, even though he had stopped taking buprenorphine while in jail, he wanted to get back on it to avoid a relapse."  The petitioner was told by DHHR to "look into" a Vivitrol shot instead.  The circuit court was also informed that supervised visits between the petitioner and L.W. had still not occurred.

On January 6, 2020, the circuit court ordered the petitioner to undergo a forensic psychological examination of parental fitness.  By order entered January 23, 2020, the circuit court officially granted the petitioner a six-month improvement period with a

---

[7] While it is obvious the petitioner had previously abused illegal substances and sought treatment for his drug addiction, neither the briefs nor the record in this case provides any detail in that regard.

commencement date of October 30, 2019.  The terms of his improvement plan[8] included the petitioner maintaining sobriety from alcohol, narcotic drugs, and illegal drugs.  Specifically, the petitioner agreed to "consider the Vivitrol shot to aid in relapse prevention" and "not get placed back on buprenorphine."  He also agreed to refrain from criminal activity, engage in therapy and/or domestic violence classes, maintain housing, maintain employment, and visit his son.

The petitioner failed to appear at the next status hearing, which was held on February 20, 2020.  His attorney informed the circuit court that the petitioner was not present because he was working.  DHHR reported that the petitioner had not been cooperative; had not seen his child; and had obtained buprenorphine despite his agreement to seek a Vivitrol shot instead.  In response, the petitioner's attorney maintained that buprenorphine was necessary to treat the petitioner's drug cravings and that the petitioner had not seen his son because he was working out of town.

Subsequently, DHHR filed a motion to terminate the petitioner's improvement period due to his failure to maintain contact and participate in services.  By order entered June 2, 2020, the circuit court denied the motion as moot because the

---

[8] The record contains a two-page document on DHHR letterhead entitled "Terms of Post-Adjudicatory Improvement Plan."  While the document clearly pertains to the petitioner's improvement period, the entire document was not included in the appendix record as it contains no signature page or date indicating when it was executed.

petitioner's six-month improvement period had expired on April 30, 2020. A disposition hearing was scheduled for June 27, 2020.

The petitioner did not appear at the disposition hearing but was represented by counsel, who indicated that he had not had any contact with his client for several months. DHHR recommended termination of the petitioner's parental rights and presented testimony from Dave Wellman, a child protective service worker for Ohio County. Mr. Wellman testified that the petitioner never participated in any drug screening throughout the case; never appeared for his court-ordered psychological examination; and never participated in any supervised visitation with his child. Mr. Wellman also testified that even though DHHR had strongly advised against the petitioner obtaining buprenorphine to address his drug cravings because he had not taken the drug while incarcerated, the petitioner nonetheless obtained the drug and never followed up on the suggestion that he obtain a Vivitrol shot instead.

The guardian ad litem ("GAL") reported that he had met with L.W. who said that he had never had much contact with his father and that he wanted his father's parental rights terminated. L.W. also told the GAL that he was aware that his father had recently contacted L.W.'s adult brother and attempted to sell or give him drugs. The GAL also expressed his opinion that the petitioner's parental rights should be terminated.

5

By order entered on September 11, 2020, the circuit court found that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future and that the welfare of the child necessitated termination of the petitioner's parental rights.  In so finding, the circuit court noted the petitioner's "lack of involvement in the case; failure to drug screen; lack of contact; and failure to do what was required by his improvement plan[.]"  Upon entry of the circuit court's order terminating his parental rights, the petitioner filed this appeal.[9]

## II.  Standard of Review

Our standard of review for abuse and neglect cases is well established:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a

[9] Following the termination of the petitioner's parental rights, L.W. was returned to the custody of S.H., who successfully completed her post-adjudicatory improvement period and divorced M.H.  The petition against S.H. was dismissed with services continuing to be provided to both her and L.W.  According to the status updates filed in this case pursuant to Rule 11(j) of the Rules of Appellate Procedure, another abuse and neglect petition was filed against S.H. after she reconnected with M.H. and began leaving L.W. alone again for weeks at time.  At an August 16, 2021, hearing, S.H. voluntarily relinquished her parental rights.  L.W. is now in a kinship placement with a permanency plan of adoption by that family.

6

finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In the Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.,* 228 W. Va. 89, 717 S.E.2d 873 (2011). With this standard in mind, we consider the parties' arguments.

## III. Discussion

In this appeal, the petitioner contends that the circuit court erred by terminating his parental rights instead of imposing a West Virginia Code § 49-4-604(c)(5)[10] disposition. He contends that he substantially complied with the terms of his improvement period because he remained free from incarceration; obtained housing; and maintained employment. He also argues that the circuit court improperly considered the fact that he used medication-assisted treatment ("MAT") for his drug addiction. Finally, the petitioner asserts that because L.W. was reunified with his mother, the circuit court should have imposed the less restrictive disposition alternative in West Virginia Code § 49-4-604(c)(5),

---

[10] With respect to disposition, West Virginia Code § 49-4-604(c)(5) provides that the circuit court may:

> Upon a finding that the abusing parent or battered parent or parents are presently unwilling or unable to provide adequately for the child's needs, commit the child temporarily to the care, custody, and control of the department, a licensed private child welfare agency, or a suitable person who may be appointed guardian by the court.

7

as it would have given him more time to comply with the other terms of his improvement period.

In response, DHHR and the GAL maintain that the petitioner's parental rights were not terminated as a result of his use of buprenorphine to treat his drug addiction. They note that the circuit court made no findings with respect to the petitioner's use of MAT in its disposition order. Instead, the circuit court found that termination of the petitioner's parental rights was necessary because his failure to participate and substantially comply with the terms of his improvement period demonstrated his inability to correct the conditions of abuse and neglect.

Recently, in syllabus point five of *In re M.M.*, 244 W. Va. 316, 853 S.E.2d 556 (2020), this Court held that

> [t]he use of medication-assisted treatment is authorized by the Medication-Assisted Treatment Program Licensing Act, West Virginia Code §§ 16-5Y-1 to 16-5Y-13 (2016), and the Act's supporting regulations. Medication-assisted treatment will not be appropriate or beneficial for all persons suffering from opioid use disorder. However, when medication-assisted treatment is appropriate and potentially beneficial, any bias against its use is contrary to the public policy of this State as announced by the Legislature.

Upon review of the record, we find no evidence of bias against the petitioner's use of MAT. Certainly, there was disagreement between the petitioner and DHHR regarding the petitioner's treatment for his drug addiction. However, the dispute concerned the petitioner's choice of drug to treat his addiction, not the fact that he was using MAT.

8

While throughout the case, DHHR urged the petitioner to use a Vivitrol shot instead of buprenorphine to treat his drug addiction, it did so because the petitioner had not used the latter drug for six months as a result of his incarceration. As DHHR acknowledged, it does not have the authority to dictate which type of MAT a person may use. However, given the petitioner's particular circumstances, DHHR's suggestion that Vivitrol shots would be a better choice of MAT was an appropriate recommendation. Critically, the fact that the petitioner chose to ignore DHHR's suggestion and obtained buprenorphine to treat his addiction was not the basis for the termination of his parental rights. Indeed, the circuit court made no findings in its disposition order regarding the petitioner's use of MAT.

The basis for the circuit court's termination of the petitioner's parental rights was his lack of communication and minimal participation in his improvement period. While the petitioner obtained housing and employment, he never submitted to a drug screen throughout the case, never appeared for his psychological evaluation, and never participated in any of the other services offered to him by DHHR. He stopped communicating with his attorney and did not attend the disposition hearing. Moreover, he never exercised his right to visit his child. Notably, the record indicates that the petitioner was minimally involved in L.W.'s life before these proceedings began. When given the opportunity to visit his child during this case, the petitioner chose not to see L.W.

"Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996); *see also* syl. pt. 2, *In the Interest of Kaitlyn P.*, 225 W. Va. 123, 690 S.E.2d 131 (2010) ("'"In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. pt. 1, *State ex rel. Cash v. Lively*, 155 W.Va. 801, 187 S.E.2d 601 (1972).' Syllabus Point 4, *State ex rel. David Allen B. v. Sommerville*, 194 W.Va. 86, 459 S.E.2d 363 (1995)."). To that end,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604,] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). West Virginia Code § 49-4-604(d) (2020) defines "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" as, "based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Such conditions exist when "[t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child[.]" W. Va. Code § 49-4-604(d)(3). In addition, "[t]he level of interest demonstrated by a parent in visiting his or

10

her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *Katie S.*, 198 W. Va. at 90 n.14, 479 S.E.2d at 600 n.14.

The petitioner's failure to visit his child coupled with his failure to participate in and substantially comply with other terms of his improvement period demonstrated that there was no reasonable likelihood that he could substantially correct the conditions of abuse and neglect in the near future. Contrary to the petitioner's assertion, the reunification of a child with one parent does not warrant a West Virginia Code § 49-4-604(c)(5) disposition for the other parent. As this Court has explained, "simply because one parent has been found to be a fit and proper caretaker for his/her child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Thus, even if S.H. had continued to be L.W.'s custodial parent,[11] there was no basis for the petitioner to retain his parental rights given the evidence showing that the conditions of abuse and neglect that led to the filing of the petition against the petitioner were not expected to improve in the near future. Accordingly, the circuit court did not err in terminating the petitioner's parental rights.

---

[11] *See* note 9, *supra*.

11

## IV. Conclusion

For the reasons set forth above, the September 11, 2020, order of the Circuit Court of Ohio County terminating the petitioner's parental rights is affirmed.

Affirmed.